IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| TILTON JOSHUA ISAIAH MAPPS, §<br>        #2085636                     §<br>                                            §         CIVIL ACTION NO.  4:19cv655<br>VS.                                      §<br>                                            §<br>                                            §<br>DIRECTOR, TDCJ-CID              § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

*Pro Se* Petitioner Tilton Joshua Isaiah Mapps, an inmate confined in the Texas prison system, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was referred to United States Magistrate Judge Kimberly C. Priest Johnson for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636, and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

## I. PROCEDURAL BACKGROUND

Petitioner is challenging his Hopkins County conviction. Petitioner was charged by indictment with the offense of murder, Cause No. 1524810. (Dkt. #15-4, p. 9). Petitioner pled not guilty, but a jury found him guilty of the offense and sentenced him to ninety-nine years' confinement. (Dkt. #15-15, pp. 40-41). The judgment of conviction entered on August 10, 2016. (Dkt. #15-15, pp. 40-41).

Petitioner appealed his conviction, which was affirmed on February 10, 2017. *Mapps v. State*, No. 06-16-00156-CR, 2017 WL 541143 (Tex. App. Feb. 10, 2017) (Dkt. #15-3). Petitioner filed a petition for discretionary review ("PDR") (Dkt. #15-12), which the Texas Court of Criminal Appeals ("TCCA") refused on June 28, 2017. *Mapps v. State*, PD-212-17. (Dkt. #15-13).

Petitioner filed an application for state habeas corpus relief in August 2018. (Dkt. #15-36, pp. 69-86). The state habeas court entered findings of fact and conclusions of law and recommended that Petitioner's application be denied. (Dkt. #15-34, pp. 4-8). On July 3, 2019, the TCCA denied the application with a written order based on the state habeas court's findings of fact and conclusions of law as well as the court's independent review of the entire record. *Ex parte Mapps*, No. WR-89,028-01, 2019 WL 2870104 (Tex. Crim. App. July 3, 2019) (Dkt. #15-38).

Petitioner filed the instant petition on July 18, 2019.[1] (Dkt. #1). Petitioner asserts the following claims for relief:

1. Trial counsel rendered ineffective assistance by failing to object to Petitioner's absence from pretrial hearings;

2. Trial counsel rendered ineffective assistance by failing to object to "*ex parte*" communications between jurors and the trial judge;

3. Trial counsel rendered ineffective assistance by misadvising him that he would be entitled to self-defense instructions even if he testified that he was not involved in the crime; and

4. The cumulation of trial counsel's errors prejudiced his defense.

(Dkt. #1, pp. 6-7). The Director filed a response, arguing that Petitioner's claims are without merit. (Dkt. #14). Petitioner did not file a reply.

## II.  FACTUAL BACKGROUND[2]

At trial, three witnesses testified that they saw Petitioner shoot and kill the victim in a public park. After Petitioner's apprehension, he gave a statement, during which he claimed self-defense. Petitioner's statement was played for the jury. Petitioner testified in his own defense

---

[1] A *pro se* prisoner's habeas corpus petition is deemed filed, for the purposes of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when the prisoner delivers the papers to prison authorities for mailing. *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998). Petitioner declared under penalty of perjury that he deposited the petition in the prison mailing system on July 18, 2019. (Dkt. #1, p. 10).

[2] The following factual background is compiled from the record, the appellate court's opinion on direct appeal, the state habeas court's findings and conclusions, and the Director's Answer with Brief in Support.

during guilt/innocence and claimed that he did not shoot the victim and was not present at the scene of his shooting. Because this version of events was contrary to the version he gave to law enforcement, abandoning his initial theory of self-defense, the trial court refused to submit Petitioner's requested instruction on self-defense.

### III.  STANDARD FOR FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993); *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996); *Brown v. Dretke*, 419 F.3d 365, 376 (5th Cir. 2005). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The new provisions of § 2254(d) provide that an application for a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) was contrary to federal law then clearly established in the holdings of the Supreme Court; (2) involved an unreasonable application of clearly established Supreme Court precedent; or (3) was based on an unreasonable determination of the facts in light of the record before the state court. *See Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). Furthermore, a state court's factual findings are entitled to deference and are presumed correct

unless the petitioner rebuts those findings with clear and convincing evidence. *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir. 2010); *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006); *see also Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002) (the statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts). This deference extends not only to express findings of fact, but also to any implicit findings of the state court. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005)). Where, as here, "the state habeas court and trial court are one in the same," the presumption of correctness afforded the state habeas court's factual determinations is "especially strong." *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (citations omitted).

"In Texas writ jurisprudence, usually a denial of relief rather than a "dismissal" of the claim by the Court of Criminal Appeals disposes of the merits of a claim." *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Henderson v. Cockrell,* 333 F.3d 592, 598 (5th Cir. 2003*)*; *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Additionally, federal habeas relief is foreclosed if a claim: (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Wesbrook v. Thaler*, 585 F.3d 245, 255 (5th Cir. 2009).

Thus, the federal writ serves as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Richter*, 562 U.S.

4

at 102-03 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

## IV.  ANALYSIS

Petitioner raises claims of ineffective assistance of trial counsel. A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995). Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong, he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness examined under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The *Strickland* court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . .

*Id.* at 689 (citations omitted). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted).

Under the second prong of the *Strickland* test, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas

5

petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

Reviewing Petitioner's ineffective-assistance-of-counsel claim through the lens of AEDPA, however, means that he has a higher bar to exceed in order to prevail. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). Moreover, unreasonableness under *Strickland* and under § 2254(d) are not the same. First, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.* Second, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

A.   **Failure to Object (Claims One and Two)**

In Claims One and Two, Petitioner asserts that he was denied effective assistance of counsel because trial counsel failed to lodge certain objections. (Dkt. #1, p. 6).

Generally, a failure to object or to file a motion, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something or file a particular pretrial motion, the courts

grant significant deference, as such actions fall "squarely within the ambit of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam). The Fifth Circuit "has made clear that counsel is not required to make futile motions or objections." *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Indeed, "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

In Claim One, Petitioner argues that he was denied effective assistance of counsel because trial counsel failed to object to Petitioner's absence from two pretrial hearings. (Dkt. #1, p. 6). Based on Petitioner's record citations, he appears to be referring to two in-chambers hearings in which both trial counsel and the prosecutor were present. The first hearing pertained to the disclosure of disciplinary records of two officers involved in the case. (Dkt. #15-21, pp. 36-40). The second hearing pertained to two jurors who disclosed personal issues affecting their duties as jurors. (Dkt. #15-23, pp. 8-18). In Claim Two, Petitioner argues that he was denied effective assistance of counsel because trial counsel failed to object to the *ex parte* meetings between the trial judge and the two jurors. (Dkt. #1, p. 6).

Petitioner raised these claims in his state habeas corpus application. The state habeas court issued the following relevant findings:

> 4. Prior to jury selection a final pre-trial hearing was held where the parties' motions were ruled upon and the court heard witnesses and considered an exhibit concerning the defendant's motion to suppress his post-arrest statement to law enforcement. After ruling on the various pre-trial motions and before presenting the Court's ruling on the suppression motion, an in-chambers hearing was conducted with the attorneys regarding an *in camera* inspection of disciplinary records of two officers who may have had some involvement in the case. The Court indicated that it did not appear that anything in the documents would be admissible in the trial, but nonetheless provided copies of the documents to defense counsel with instructions to approach the bench during trial to get a ruling as to whether matter contained in the documents would be admissible in the trial. After this in-chambers meeting, the Court considered its ruling on the suppression motion and pronounced in open court that it was denying the defendant's motion, stating the findings of fact and conclusions of law on the record.

7

. . . .

6. Immediately after the jury was selected, seated, admonished, and excused with instructions to return the following Monday to begin the trial, Juror Lydia Sifuentes was brought to the bench by the bailiff. The parties were still in the courtroom and were packing their materials and making way for the next batch of attorneys who would pick the next jury. Ms. Sifuentes informed the Court that she was of the Jehovah's Witness faith and would have problems with taking an oath.[2] She stated she could serve, but would be unable to "swear to God." The option of allowing her to affirm her intentions to render a verdict based solely upon the evidence and the law was discussed. The parties were informed of the situation and requested time to research the issue and report back to the Court. Ms. Sifuentes was released with instructions to report the next week for the trial. Applicant was present in the courtroom when this occurred.

> [FN2] Ms. Sifuentes confirmed that she had taken the first oath to tell the truth regarding her qualifications and service as a juror because she could affirm that she would do so.

7. On [] August 5th, the Friday following jury selection but before the Monday the trial would begin, the Court Bailiff brought Juror Jimmy Beck into the Judge's office. Mr. Beck stated that he may have encountered a conflcit that would affect his duty as a juror. He was told to report to the courthouse on the 8th as previously directed and that the issue would be discussed when the parties were present for the trial.

8. On the morning of August 8th, both Jurors Sifuentes and Beck were brought into the Judge's chambers, one at a time, to discuss their respective situations. Trial counsel for Applicant made Applicant aware of the situation. While Applicant came into the Judge's chambers with his attorney the week before at the end of jury selection to discuss two *Batson* challenges, Applicant was not present during the subsequent *voir dire* of the two jurors.

9. Juror Sifuentes expressed her concerns regarding taking an oath and about sitting in judgment of another, specifically regarding assessing the death penalty (which, of course, was not a potential sentence in this case). She was questioned by the Court and the attorneys. A decision was made, without objection, to permit her to affirm (in lieu of taking an oath) her intention to render a proper verdict in the case. That affirmation was reduced to writing, signed by Ms. Sifuentes, and filed with the Clerk.[3]

> [FN3] The issue of the affirmation-in-lieu-of-an-oath was one of two points of error raised on direct appeal. The conviction was affirmed on February 10, 2017, by the Court of Appeals for the 6th Appellate District. The issue was also the sole point raised in

8

> Applicant's *Petition for Discretionary Review*, which was refused on June 28, 2017.
>
> 10. Juror Beck reported he had learned that the lady who sits with his mother as a daily caretaker was a family member of the victim in the case and that she had been talking about the case with his family members, part of which occurred in his presence. He stated he was unaware of this information during jury slection and he now felt uncomfortable serving on the jury given this development. Counsel for the Applicant questioned Mr. Beck. ([It] is worth noting that, if Mr. Beck's continued service on the jury would have prejudiced anyone, it clearly would have been the Applicant.) Mr. Beck was excused by agreement of the parties and replaced with the first of the two previously selected alternates.

(Dkt. #15-34, pp. 5-6).

The state habeas court then made the following conclusions pertaining to Claims One and Two:

> 1. During the trial, Applicant's trial counsel continually conferred and consulted with Applicant. Applicant was not prejudiced by his absence during the three instances he raised in Ground One of his application.
>
> 2. There were no improper *ex parte* communications between the trial court and either of the two jurors referenced in the application. While Applicant was not present during the examination of the jurors (though the attorneys were), Applicant was not prejudiced by his absence. To the contrary, he was well represented.
>
> 3. Applicant mischaracterizes his absence in what he refers to as "critical stages of the jury selection process." . . . .
>
> . . . .
>
> 12. Applicant's trial counsel's performance was not deficient.

(Dkt. #15-34, pp. 7-8). The record clearly supports the factual findings made by the state court, and Petitioner fails to rebut those findings.

### 1. Failure to Object to Petitioner's Absence from Two Pretrial Hearings (Claim One)

The core concern of the right to courtroom presence is that a defendant's "absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 820 n.15 (1975). To

9

that end, the Supreme Court has held that "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the proceeding." *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987). Due process, however, does not require the defendant's presence when it would be useless or only slightly beneficial. *See Snyder v. Massachusetts*, 291 U.S. 97, 106-08 (1934) (concluding the presence of a defendant is required "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only"), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964). If the defendant's presence does not bear a "reasonably substantial" relationship to the opportunity to defend, no harm will result from a defendant's absence. *Id.* at 106. When there is no indication that the defendant "could have done [anything] had [he] been at the [hearing] nor would [he] have gained anything by attending[,]" a defendant's absence does not violate his due process rights. *Stincer*, 482 U.S. at 747 (alterations in original) (quoting *United States v. Gagnon*, 470 U.S. 522, 527 (1985) (per curiam)). In such a case, his "'presence would be useless, or the benefit but a shadow.'" *Id.* at 745 (quoting *Snyder*, 291 U.S. at 106-07).

      Petitioner fails to rebut the state court's finding that Petitioner's absence from the hearing regarding the disciplinary records of two police officers and the hearing regarding the two jurors who disclosed personal issues affecting their duties as jurors did not prejudice his defense. Furthermore, implicit in the state court's general finding—that trial counsel's performance was not deficient—is the finding that trial counsel did not render ineffective assistance under *Strickland* by not objecting to Petitioner's absence from these two hearings. The court defers to this implicit finding. *See Garcia*, 454 F.3d at 444-45. Petitioner also fails to demonstrate that the state habeas court's findings and the TCCA's independent review of the record resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted

10

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Specifically, Petitioner has not shown that his presence during the hearing on the admissibility of the police disciplinary records or the conference regarding two of the jurors' impartiality would have been helpful. The hearing on the police disciplinary records resulted in Petitioner's access to the records, and the conference regarding the two jurors was designed to ensure the jury's impartiality and resulted in one of the juror's being excused, which, as noted by the state habeas court, inured to Petitioner's benefit. In short, Petitioner does not establish that he could have done anything had he attended the hearing or conference, nor that he would have gained anything by attending. *See Stincer*, 482 U.S. at 747. Petitioner's absences therefore did not violate his due process rights because his "presence would be useless, or the benefit but a shadow." *Id.* at 745 (quoting *Snyder*, 291 U.S. at 106-07). Because there was no basis to object to Petitioner's absences from these hearings, trial counsel's failure to do so does not constitute ineffective lawyering. *See Clark*, 19 F.3d at 966. Consequently, Petitioner fails to demonstrate that the state court's rejection of this claim was unreasonable. Accordingly, Claim One should be denied.

### 2. Failure to Object to *Ex Parte* Communications Between the Trial Judge and Two Jurors (Claim Two)

*Ex parte* communications between judge and jury may violate a defendant's due process rights. *Gagnon*, 470 U.S. at 526. However, "[t]he mere occurrence of an *ex parte* conversation between a trial judge and a juror does not constitute a deprivation of any constitutional right. The defense has no constitutional right to be present at every interaction between a judge and a juror, nor is there a constitutional right to have a court reporter transcribe every such communication." *Id.* (quoting *Rushen v. Spain*, 464 U.S. 114, 125-26 (1983) (Stevens, J., concurring)). As the Supreme Court has stated:

11

> There is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial. The lower federal courts' conclusion that an unrecorded *ex parte* communication between trial judge and juror can never be harmless error ignores these day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice.
>
> This is not to say that *ex parte* communications between judge and juror are never of serious concern or that a federal court on habeas may never overturn a conviction for prejudice resulting from such communications. When an *ex parte* communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties.

*Rushen*, 464 U.S. at 118-19.

Petitioner fails to rebut the state court's finding that there were no improper *ex parte* communications between the trial judge and the two jurors. Furthermore, implicit in the state court's general finding—that trial counsel's performance was not deficient—is the finding that trial counsel did not render ineffective assistance under *Strickland* by not objecting to the *ex parte* communications between the trial judge and two jurors. The court defers to this implicit finding. *See Garcia*, 454 F.3d at 444-45. Petitioner also fails to demonstrate that the state habeas court's findings and the TCCA's independent review of the record resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Here, after the trial judge spoke with the two jurors, the trial judge reported to the prosecutor and Petitioner's trial counsel the substance of his conversations and conferred with both counsel on the best course of action. Notably, one of the jurors was excused, which inured to Petitioner's benefit. Given the broad discretion accorded to counsel under *Strickland*, it was not unreasonable for counsel not to raise an objection. Furthermore, Petitioner has not established a reasonable probability that, even if counsel had objected, the trial judge would have granted a mistrial, or that but for counsel's unprofessional

12

errors, the result of the proceeding would have been different. Thus, Petitioner's claim of ineffective assistance based on his trial counsel's failure to object to the *ex parte* communications fails both prongs of the *Strickland* test. Consequently, Petitioner fails to demonstrate that there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98. Accordingly, Claim Two should be denied.

**B.     Improper Advice Regarding Self-Defense Instructions (Claim Three)**

In Claim Three, Petitioner contends that trial counsel rendered ineffective assistance by misadvising him that he would be entitled to self-defense instructions even if he testified that he was not involved in the crime. (Dkt. #1, p. 7).

Petitioner's claim was fully developed during the state habeas corpus proceedings. In response to Petitioner's application for state habeas corpus relief, Petitioner's trial counsel submitted an affidavit, stating that he "met extensively with [Petitioner] in preparing his defense" and "went over the law and evidence pertaining to self defense and confessions over and over again." (Dkt. #15-34, p. 9). He also stated that he "repeatedly warned [Petitioner] of the risks of making inconsistent statements and the detrimental effects they could have on him." (Dkt. #15-34, p. 9). During trial, trial counsel "continually conferred and consulted with [Petitioner]." (Dkt. #15-34, p. 9). The state habeas court issued the following findings with respect to Petitioner's Claim Three:

> 12. In his case in chief, Applicant took the stand and testified to a version of events contrary to the version he gave to law enforcement, abandoning his initial theory of self-defense and substituting with a version that, in its form and substance, denied that he had shot the victim or that he was even around when it occurred.[4]
>
>> [FN4] The lack of a self-defense instruction in the jury instructions was the Applicant's other point of error raised on direct appeal. After the conviction was affirmed, the [Applicant] chose not to pursue that issue in his *PDR*.

(Dkt. #15-34, p. 7). The state court then made the following conclusions:

> 5. Applicant's trial counsel advised Applicant of the law of self-defense and the "confession and avoidance" doctrine prior to Applicant taking the stand in his own defense. Applicant took a calculated risk when he changed theories, abandoning his self-defense strategy, and going instead with a "I wasn't even there when it happened" strategy.
>
> . . . .
>
> 12. Applicant's trial counsel's performance was not deficient.

(Dkt. #15-34, pp. 7-8).

Petitioner fails to rebut the state court's finding that trial counsel advised Petitioner about Texas's "confession and avoidance" doctrine. Furthermore, implicit in the state court's general finding—that trial counsel's performance was not deficient— is the finding that trial counsel did not render ineffective assistance under *Strickland* regarding his advice to Petitioner about Texas's "confession and avoidance" doctrine. The court defers to this implicit finding. *See Garcia*, 454 F.3d at 444-45. Indeed, Petitioner's allegation that trial counsel misadvised him is purely conclusory and lacks any evidentiary support; thus, it is insufficient to support a claim of ineffective assistance of counsel. *See Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998).

Petitioner also fails to demonstrate that he was prejudiced by trial counsel's advice under *Strickland*. Regardless of trial counsel's advice, Petitioner was not entitled to a self-defense instruction. As explained by the Sixth Court of Appeals on direct appeal, the trial court did not err in refusing to give an instruction on self-defense because Petitioner testified in his own defense that he did not shoot the victim and was not present at the scene of his shooting. *Mapps*, No. 06-16-00156-CR, 2017 WL 541143, at *2. Petitioner does not challenge this determination in his federal habeas petition. The fact that trial counsel's arguments with respect to the self-defense instruction were unsuccessful does not render his assistance constitutionally ineffective. *See*

14

*Martinez v. Dretke*, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

Finally, Petitioner fails to demonstrate that the state habeas court's findings and the TCCA's independent review of the record resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Claim Three should be denied.

C. **Cumulative Error (Claim Four)**

In his fourth claim, Petitioner asserts that trial counsel's errors were cumulative and prejudiced his defense. (Dkt. #1, p. 7). Petitioner raised this claim in his state habeas application, and it was implicitly denied by the state courts.

As set forth above, Petitioner's ineffective assistance of counsel claims are all without merit and should be denied. When a petitioner's claims have been found to be without merit, he is not entitled to relief based upon the cumulative effect of errors. *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992); *see also Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992) (holding that relief can be granted for cumulative error in the conduct of a state trial where (1) the errors involved matters of "constitutional dimension"; (2) they are not procedurally defaulted; and (3) they "so infected the entire trial that the resulting conviction violates due process"). Therefore, Petitioner is unable to show that he was denied the effective assistance of counsel or that his defense was prejudiced as the result of cumulative error.[3] Consequently, Petitioner fails to

---

[3] To the extent Petitioner relies on the ineffective assistance of counsel claims that were raised in his state habeas corpus application but not raised as individual claims in his § 2254 petition, Petitioner fails to demonstrate—or even attempt to demonstrate—that these claims have merit and that the state court's denial of these claims resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. As such, these claims cannot be the basis of a cumulative error claim.

demonstrate that there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98. Accordingly, Claim Four should be denied.

## V. CONCLUSION

Petitioner fails to show that any of his claims have merit. Petitioner fails to demonstrate that trial counsel rendered ineffective assistance under *Strickland*. Petitioner also fails to rebut the presumption of correctness owed to the state court's factual findings with clear and convincing evidence to the contrary. *Wooten*, 598 F.3d at 218. Above all, Petitioner fails to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d); *Richter*, 562 U.S. at 97-98; *Childress v. Johnson*, 103 F.3d 1221, 1224-25 (5th Cir. 1997). In sum, he fails to show there was no reasonable basis for the state court to deny relief. *See Richter*, 562 U.S. at 98. Accordingly, Petitioner's habeas petition should be denied and dismissed.

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that the Court, nonetheless, address whether Petitioner would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (holding that a district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court," noting that

"[f]urther briefing and argument on the very issues the court has just ruled on would be repetitious").

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a substantial showing of the denial of a constitutional right in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, it is recommended that reasonable jurists could not debate the denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El*, 537 U.S. at 336-37 (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

It is recommended that the above-styled petition filed under 28 U.S.C. § 2254 be denied and that the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 16th day of May, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE